## Ham's *case.*

On the trial of one indicted for bigamy, adultery, or lascivious cohabitation ; the marriage, whether solemnised within this State or elsewhere, may be proved by the voluntary and deliberate confession of the defendant.

But where the defendant, about twenty years before the offence was committed, in contracting for the hire of a house, stated that he had but a small family "a wife and one child" ; and afterward moved into the house with *a woman* whom he called " *Miss Ham*" ; with whom, as his wife, he lived for several years and then deserted, it was holden not to be sufficient proof of the marriage in an indictment for adultery.

This was an indictment charging the respondent with the crime of adultery. To prove the marriage the government relied on evidence of the following facts : — The respondent moved into the town of *Fayette,* in this State, more than twenty years ago, representing at that time, to the person of whom he hired the house, that he had a small family, only *a wife* and one child. Soon after hiring said house, he moved into it with *a woman* and one child about five or six months old, and continued to live with that woman, as his wife, until about three years since, when he left her and came into this County or the County of *Penobscot.* In 1807, he built a house in *Fayette,* moved his family into it, continued to reside there until he left the town. During their cohabiting together, they were reputed to be husband and wife, and were supposed to be married ; and the woman had five or six children which were reputed to be his. He called the woman " *Miss Ham,*" and treated her as a wife.

The reputed wife's parents resided in *Winthrop,* in this State, at the time *Ham* removed to *Fayette,* and for many years before and at the time of the reputed marriage, and subsequently, went to live in *Ham's* family, where they continued to reside until their decease. There was no evidence that either *Ham,* or his reputed wife, had ever resided without the limits of *Maine,* either before or since their reputed marriage.

The counsel for the prisoner objected to all evidence tending to prove a marriage by reputation, but the objection was overruled. The counsel also contended that, this evidence was insufficient to prove the marriage, but *Parris J.* who presided at the

trial, being desirous of reserving this question, as one important in practice to be settled, ruled otherwise.

The indictment was found at the *June* term, 1833, and the offence was alleged to have been committed in *Corinna*, in the county of *Somerset*, on the 27th of *October*, 1832. At that time the town of *Corinna* was included within the limits of the county of *Somerset*; but on the 10th of *February*, 1833, said town was set off from the county of *Somerset* and annexed to, and made a part of the county of *Penobscot*; and the counsel for the prisoner contended, that he ought not to be holden to answer in this county for the alleged offence as set forth in the indictment. But the Judge ruled otherwise. If in the opinion of the whole Court the foregoing ruling was wrong, on either point, the verdict was to be set aside and a *nolle prosequi* entered.

*Tenney*, counsel for the prisoner, contended, that in criminal prosecutions, a marriage could not be proved by reputation — the authorities are all against it. Proof of cohabitation is insufficient; a marriage *in fact* must be proved. 2 *Stark. Ev.* 438; *Ibid.* 939; 2 *Phil. Ev.* 142; *Morris* v. *Miller*, 4 *Burr.* 2057; 3 *Black. Com.* 140.

Nor are confessions sufficient evidence of a domestic marriage. *Commonwealth* v. *Littlejohn*, 14 *Mass.* 163; 2 *Stark. Ev.* 437; 3 *Stark.* 1186; 2 *Phil.* 152; *Cayford's case*, 7 *Greenl.* 57.

But it is denied that *Ham* ever confessed himself a married man, or that he called the woman he lived with, *his wife*. He called a woman *Miss Ham* — but this was not admitting her to be his wife — she might have been his mother or sister.

But if he intended to call her his wife, it would not be conclusive against him. In general, it may be admitted, that the confessions of a prisoner are proper evidence; for it is not to be presumed that a man will confess himself to be guilty of an offence, when he is innocent — the feelings of our nature are against it. But it is otherwise in regard to this offence. There may be numerous motives operating upon a man to induce him to call a woman his wife when she is not so in fact.

2. The indictment in this case should have been found, and trial had, in *Penobscot*, if any where, the act having been com-

mitted there. 4 *Black. Com.* 350 ; 3 *Black. Com.* 352. It is a privilege of the accused and is one of great value to him, to be tried by his neighbors. But by the alteration of county lines here, the defendant was deprived of the privilege of having any one from *Corinna*, on his jury. *Maine Statute, ch.* 54 ; *Const. of U. S., article* 6, of the Amendments.

*Clifford*, Attorney General, argued that the confessions of *Ham* were tantamount to an express acknowledgment of marriage ; — and then contended that, confession accompanied by cohabitation, birth of children, &c. was sufficient to prove a marriage in a prosecution for adultery, and cited *Cunningham* v. *Cunningham*, 2 *Dow.* 482 ; 1 *East's P. C.* 470 ; 2 *Phil. Ev.* 151 ; 1 *Russell on Crimes*, 206 ; 3 *Stark. Ev.* 1184 ; *Commonwealth* v. *Murtagh*, 1 *Ashmead*, 272 ; 8 *Serg. & R.* 159.

Most of the difficulties on this point, he contended had grown out of the case of *Morris* v. *Miller*, 4 *Burr*, 2057, cited on the other side. But the ruling of this point, in that case, was a mere *obiter dictum*, not called for by the facts in the case. The Attorney General here argued at length against the authority of *Morris* v. *Miller*, and endeavored to show, that it was not founded on principle, nor had been supported directly by subsequent decisions.

In regard to the point made by defendant's counsel, that, the indictment should have been found, and trial had, in *Penobscot*, he cited the following authorities : 9 *Johns.* 248 ; 1 *Chit. C. L.* 146 ; *Co. Litt.* 125 a. ; 1 *Hawk. Pl. of the Cr.* 470 ; 1 *Chit. C. L.* 454 ; *Ibid.* 165 ; 10 *Mass.* 78 ; 2 *Russell on Cr.* 716 ; 2 *Cowen*, 526 ; *Commonwealth* v. *Springfield*, 7 *Mass.* 9 ; 1 *Leach*, 536.

MELLEN C. J. delivered the opinion of the Court.

In this case two questions have been reserved for our consideration : — 1. Whether the evidence reported is sufficient to prove the marriage alleged in the indictment : — 2. Whether the defendant is triable by law in this county.

With respect to the *first* question there seems to be some degree of uncertainty, according to English decisions. We had occasion, in the case of *State* v. *Cayford*, 7. *Greenl.* 57, to examine the principal English authorities in relation to the sufficiency

of the evidence necessary to prove the plaintiff's marriage, in an action for criminal conversation with his wife, and, in cases of indictments, what is competent and sufficient proof of the defendant's marriage, when charged with the crime of bigamy or adultery. We refer to our opinion in that case, and to the authorities there cited, without a re-examination of them on this occasion. There certainly appears to be some relaxation of the rules of evidence on the subject. We are perfectly satisfied with our dicision in *Cayford's* case. The marriage there, was a *foreign* one and this Court could not by any of its process procure any higher proof of it, than was produced, hence it was considered competent and sufficient to establish the fact of the marriage and justify the conviction of the defendant, in connection with the evidence, proving the criminal act charged. Whether a deliberate confession, understandingly made, would be sufficient, as well as competent evidence to prove a *domestic* marriage, by which we mean a marriage solemnized within this State, in support of an indictment for adultery or bigamy, we then reserved for future consideration. We are now called on to examine that question and decide it, so far at least as the facts of the case extend : and in doing this it is desirable, and may be useful, to lay down those rules and principles in relation to the subject which may serve as guides in the prosecution of crimes of a similar nature in future. The question, which at once presents itself on this occasion is, why should not the defendant's *deliberate* and *explicit* confession of his *marriage*, in such a prosecution, be as competent evidence to prove such *marriage*, as a similar confession is to prove the crime of *adultery* charged. If *either* fact exists, it must be certainly within his own knowledge : and, as a general proposition, it is certainly true, that a deliberate and voluntary confession, understandingly made, is the best evidence ; for he who makes it, speaks from his actual knowledge of the fact ; no one has any interest in its truth, or interest in disputing it. The confession of the grantor or obligor that he signed and sealed the instrument, which bears his name, is not considered as legal evidence of the execution of such instrument, when the subscribing witnesses can be produced, even when the action is against such grantor or obligor. The wisdom and good sense of this rule of

evidence has often been severely criticised; but it seems to be founded on the idea that *both* parties are entitled to the benefit of all the facts and circumstances attending the execution of the instrument, from the testimony of the witnesses; facts which might not appear by the confession, and yet have a legal operation in deciding the fact of execution. Viewing the question under consideration, independently of decided cases, there would seem but one reason why the deliberate confession of his marriage, made by a defendant in a prosecution against him for bigamy or adultery, should not be received as competent and satisfactory evidence of such marriage, namely, that the person solemnizing the marriage had no legal authority to do it : and yet the want of authority might not have been known by the person officiating, or by the defendant himself, when he made the confession. Instances of the kind above stated have fallen under the judicial cognizance of this Court. In some cases such marriages have been confirmed by the Legislature on the application of the parties interested. In cases so circumstanced, a defendant might, by his confession, involve himself in all the consequences which would follow from record proof of a regularly solemnized marriage, and a legal conviction, when in fact the crime charged had never been committed. In no other cases, however, do we perceive that any unfavorable consequences could ensue, which would not follow upon a conviction upon undisputed proof of a legal marriage. If such a difficulty as this can be obviated, we may ask, what good reason can be assigned why more and stronger proof should be necessary to prove the *marriage* than the *crime* charged ? Both are facts which may be proved by parol testimony. Why is the marriage better or more clearly proved by the testimony of a witness who saw a certain clergyman or magistrate solemnize the marriage, than by the voluntary and deliberate confession of the party charged, that *such* clergyman or magistrate did solemnize the marriage ? The plea of guilty is a confession of the *crime*, which includes a confession of the *marriage*, that being essential to the existence of the crime. The Court receives such a plea, and passes sentence on the offender; though even this solemn confession in open Court may be made under a mistaken belief that the marriage was solemnized by a person duly authorised,

Ham's case.

though the fact was otherwise. It is said that such confession is not the best evidence ; that the law requires a marriage to be recorded, and that the record should be produced, as being the best evidence. Surely this objection cannot be sustained : for it is an admitted principle, and constantly adopted in practice, that the testimony of a witness, who was present at the marriage ceremony, is legal evidence, and in fact it is *better* evidence than the record ; because the record does not establish the fact of *identity* ; but a witness on the stand proves not only the marriage solemnized but that the defendant on trial was *one* of the parties. The question then is, whether a deliberate confession of the marriage is not as convincing evidence of the fact as the testimony of a witness present ; for in the case of confession, the question of *identity* can never arise. When we take all the foregoing circumstances into consideration, together with the known fact that marriages are seldom recorded as the law requires, and the difficulty of ascertaining who were present at the marriage, especially among the lower classes, and after the lapse of a few years, we apprehend that the interests of public justice would be advanced by a relaxation of the rules of evidence touching the point before us, and by a more liberal principle applied in the investigation of facts, so that the laws of the land may be more surely enforced against unprincipled offenders, and the public morals be more faithfully and effectually guarded. Upon full consideration of the subject, it is the opinion of the Court that in the trial of a person indicted for bigamy, adultery or lascivious cohabitation, the marriage necessarily to be proved, in order to sustain the indictment, whether it was solemnized within this State, or elsewhere, may be proved by the voluntary and deliberate confession of the defendant ; and the proof of such confession, if accompanied by a statement of the name of the clergyman or Justice of the Peace who lawfully solemnized the marriage, if believed by the jury, shall be deemed sufficient proof of the marriage ; and when such confession shall *not* be accompanied by a statement of the name of the officiating clergyman or Justice of the Peace, it shall, if believed, be deemed competent and *prima facie* evidence of such marriage. Such evidence of marriage, however, would be considered as deriving strength from the circumstance of the cohabitation of the parties as husband and wife, and by the birth of children and their resi-

dence in the family as a part of it. We do not mean to be understood as applying the principles above stated to the proof of marriage in the case of an action for criminal conversation with the plaintiff's wife. In such an action the confession of a defendant stands on different ground. He may know nothing of the fact of the marriage himself; and his declarations may, perhaps, amount to nothing more than a confession of what is publicly reported and reputed to be the fact. Having thus laid down these principles and rules of evidence which we considered as proper to be observed and applied in the criminal trials before mentioned, we now proceed to examine the evidence reported by the Judge who presided at the trial, and saved the question, at the request of the Attorney General, in the only manner in which he could save it, namely, by ruling against the defendant. From the report we must conclude, that if there ever was any marriage as alleged, it must have taken place in this State. But if he ever was married, his wife must have been living at the time of the offence charged, to justify his conviction. The report states, that more than twenty years ago the defendant said he had "only a wife and one child." That soon after, it was proved, he moved into a house with "*a woman* and a small child," and lived with *her* as man and wife, that *they* were reputed as such, and had several children, that he called her *Miss Ham*, and treated her as a wife. It does not necessarily appear that the woman he *lived with* was the same person that he had before *spoken of*. His calling her "*Miss Ham*," or his wife, is no proof that she was his wife. It is far from a deliberate and explicit confession that he was ever *married to her*. As before has been observed, if he had "a wife" more than twenty years ago, it does not appear that she was living at the time the alleged offence was committed; nor does it appear that she was the "woman" with whom he afterwards lived, and called "*Miss Ham*." The confession is not sufficient, according to the principles above stated, to justify a conviction. It does not amount to a distinct and deliberate confession of a marriage, continuing to the time of the offence charged in the indictment. Accordingly the verdict is set aside, and as agreed, a *nolle prosequi* is to be entered. Our decision in favor of the defendant on this first point, renders an examination of the second objection unnecessary.