## MARY C. STEELE *vs.* HENRY W. STEELE.

There is no proceeding known to our common law, or to our system of equity, by which the marriage relation can be dissolved. Divorce is the special creature of statute.

The manner in which the Superior Court shall proceed and the rules by which it shall be governed in acting upon applications for divorce, are not prescribed by the statute giving it jurisdiction of the subject, and both are therefore left to its discretion.

Where, therefore, while a petition for a divorce was pending, which had been brought before the petitioner had resided three years in the state, as required by the statute, a supplemental bill was allowed to be filed after she had resided three years in the state, it was held that the proceeding was not void, though such a practice was not to be sanctioned.

Where the respondent, who had already appeared to defend against the original petition, continued his appearance, and made defence upon a trial of the case, without objecting to the supplemental bill, it was held that he had waived all objection to its irregularity.

Where the respondent, in a proceeding in error to set aside the decree of divorce, claimed that he did not know of the supplemental bill until after the trial, but it appeared that it was regularly filed with the clerk, and there was nothing in the record to show that her counsel did not know of it, and the allowance of it was not assigned as error, it was held that the claim could not be regarded.

Steele *v.* Steele.

PETITION for a divorce, brought to the Superior Court in New Haven county. The original petition was brought on the 27th day of July, 1865, to the September term of the court in that year, and charged as the ground of divorce the intemperance and cruelty of the respondent. At this time the petitioner, who had removed into this state from another, had not resided three years in the state, as required by statute in all applications for divorce by parties who have removed from another state into this. At the May term of the court in the year 1867, after the petitioner had resided three years in the state, she filed the following supplemental bill:

"Mary C. Steele *vs.* Henry W. Steele. Superior Court, New Haven county, May term, 1867.

"The petitioner in the above entitled cause, by way of supplement to her aforesaid petition, and as additional cause of divorce to the causes in said petition set forth, alleges that on or about the 1st day of March, A. D. 1864, the said respondent willfully deserted your petitioner, and has continued his said desertion, with total neglect of all the duties of the marriage covenant on his part to be performed, from thence hitherto. Wherefore your petitioner prays the court to enquire into the allegations aforesaid, as well as into the allegations of said original petition, and on finding the same true, to grant her a divorce, pursuant to the statute in such case provided. Dated at New Haven this 14th day of May, A. D. 1867."

On the 27th day of September, 1867, and after the above supplemental bill was filed, the respondent filed the following plea, which was written on the back of the original petition: "The respondent denies the truth of the matters alleged in the foregoing petition of the said Mary C. Steele, and thereof puts himself on the court for trial." On this plea issue was joined, and the case was heard before a committee appointed by the court, who made the following report:

"I find that the petitioner and the respondent were lawfully married in Hamden, New Haven county, Connecticut, in November, 1848. They lived together in Connecticut until June, 1852, when the respondent removed to the city of New

York, and was joined there by the petitioner in the following September. The parties continued to reside in New York until February, 1863, when they removed to Philadelphia, Pennsylvania, where they remained until February, 1864, when they returned to New York, and on the 29th of March, 1864, the petitioner returned to her mother's home in Hamden, Connecticut, where she has since resided, and the respondent continued to reside in New York. I find that in the month of March, 1864, and prior to the 29th day, the respondent willfully deserted the petitioner, and has continued such desertion from thence hitherto, with total neglect of all the duties of the marriage covenant on his part to be performed. I find that during the period between the fall of 1857, and the time of said desertion, in March, 1864, the respondent was guilty of such misconduct as permanently to destroy the happiness of the petitioner, and defeat the purposes of the marriage relation. I find that the petitioner lived with the respondent in the performance of all the duties of the marriage covenant on her part to be performed, until the time of said desertion. I find the allegations in the petition, that the respondent has been habitually intemperate, and guilty of intolerable cruelty, not proved and not true."

The respondent filed a remonstrance against the acceptance of the report of the committee, which was heard before *Phelps, J.*, who overruled the remonstrance and accepted the report. The respondent thereupon objected to the passing of any decree of divorce upon the facts so found, for the reason that the period of three years' willful desertion of the petitioner by the respondent, as found by the court, had not elapsed at the time of the bringing and date of the original petition, or of the service thereof, and for the reason that the petitioner had not resided in this state for the period of three years prior to the bringing of the petition. The petitioner claimed a decree of divorce upon the facts so found, for the reason that the period of three years' willful desertion had elapsed long prior to the filing of her supplemental petition in the cause, and that the petitioner, during all the period of more than three years prior thereto, had resided in this state; and the

petitioner further claimed that the respondent, by consenting to a full hearing upon the supplemental petition, and to a finding of facts by the court upon the allegations thereof, had waived all right of objection to the filing of the supplemental petition, and to the passing of a decree upon the allegations thereof, so found true by the court. The court overruled the respondent's objections, and granted a decree of divorce.

The respondent thereupon filed a motion for a new trial and also a motion in error. The errors assigned upon the latter motion were that the petitioner had not resided in the state three years before the bringing of the petition, and that the respondent's desertion of her had not continued for three years at the time the petition was brought.*

*H. B. Harrison* and *Kellogg*, in support of the motions.

1. The judgment of divorce in this case should be reversed and the decree annulled, as it was passed in direct violation of the statute. That is imperative, that "if the petitioner shall have removed from any other state to this state, and shall not have statedly resided in this state three years next before the date of the petition, the petitioner shall not take any thing by the petition." The case does not fall within any exception of the statute, neither of the causes of divorce having arisen subsequently to her removal into this state, and the respondent not having statedly resided in this state three years next before the date of the petition. In fact, the respondent never has resided in this state since June, 1852. The facts found by the committee show that he has continued to reside in New York since the petitioner removed to this state in March, 1864. The date of the petition is July 27th, 1865,

---

* The statute affecting the case is as follows: Gen. Statutes, p. 306, sec. 35. "If the petitioner shall have removed from any other state or nation to this state, and shall not have statedly resided in this state three years next before the date of the petition, the petitioner shall not take any thing by the petition unless the cause of divorce shall have arisen subsequently to the removal into this state, or unless the adverse party shall have statedly resided in this state three years next before the date of the petition and actual service of the petition shall have been made upon such party, in which cases the petitioner may maintain the petition, although he or she shall not have removed into this state, nor resided therein, three years next before the date of the petition."

and it was served August 5th, 1865. The petition is claimed to have been served upon the respondent at Waterbury, in this state; but the facts found by the committee show that he has not resided in this state since 1852. Even if the respondent had been residing in Waterbury at the date of the petition, which is not the fact, it would not aid the petitioner's case, as the report shows that he could not have resided in this state "three years next before the date of the petition." The report is explicit, that both the causes of divorce arose prior to the removal of the petitioner into this state in 1864. The case of *Sawtell* v. *Sawtell*, 17 Conn., 284, is conclusive upon these points. The statute in force then was precisely the same as it is now, except the provisions since added as exceptions, and the petitioner has not brought her case within any of those exceptions, as is clearly shown. As Judge Waite well says in that case, such a construction as claimed by the petitioner "would open a wide door for applicants from abroad."

2. The filing of the supplemental bill does not aid the petitioner. It was filed without the knowledge or consent of the respondent. The respondent never answered it or recognized it in any manner, as we think appears from the record. The answer made by him after the filing of the supplemental bill, is an answer to the original petition only, and issue was joined by the petitioner upon that answer. The answer was written upon the back of the original petition, and refers exclusively to the "matters alleged" in that petition, designating it as the "foregoing" petition. There is the same charge of desertion in the original bill as in the supplemental bill, and in the same language. There is no allusion to the supplemental bill in the report of the committee, and every fact found therein could be found under the allegations of the original bill. No issue has ever been joined upon the supplemental bill, and the finding can not be legally applied to it. The three years desertion had not transpired prior to the date of the original petition; and this fact is also fatal to the petitioner's case.

3. There has been no waiver by the respondent of his right to object to the supplemental bill. There could be no waiver

upon the facts disclosed. It is not a case for waiver. The whole proceeding is statutory, and the statute expressly prohibits the granting of a divorce in a case like this. The courts will not recognize any agreement or waiver of statutory law in a case of divorce. Such an agreement would be contrary to public policy, and subversive of public morals, by leading to the divorce of parties at their pleasure. Such an agreement should be rejected by any court.

*Beach* and *Doolittle,* contra.

BUTLER, J.* This case comes before us by motion in error and a motion for a new trial, but the material questions raised are few, and a particular or separate notice of the motions is not necessary.

The petitioner was married in this state, but went to reside with her husband in another state, and thereby lost her domicil here and took his there. She was there ill treated and deserted, and returned to this state; and after the lapse of about sixteen months only, brought her petition for a divorce, which was served on the respondent, and he appeared to defend. When she brought her petition she had no right to a divorce; but the petition was suffered to lie in court until three years had elapsed from her return here, when a supplemental bill, as it is termed, was filed, and the parties had a hearing, and she was divorced.

The argument of the petitioner assumes that the application for a divorce is a proceeding in equity, and governed by its rules; and that she had an equitable right to file a supplemental bill, because her right to a divorce was inchoate when the original petition was served, but became perfect before that supplemental bill was filed. To these propositions we can not accede.

Generally parties to contracts may rescind or dissolve them by mutual consent; but marriage, although effected by a contract, establishes a *relation*, which the parties can not rescind or dissolve, and which can not be annulled by any proceeding

---

* This case having been submitted on briefs, Judge Butler took part in the decision, though not present at the term.

known to our common law, or our system of equity. Divorce
is therefore in this state the special creature of statute. Like
other statutory and special applications to the Superior Court
for special relief, it is commenced by petition; but it is not
for that reason a proceeding in equity, nor does its intrinsic
character, or the statute which authorises it, make it such a
proceeding, and the petitioner could not claim a right to file
the bill.

But the manner in which the Superior Court shall proceed
to hear and determine the application, and the rules by which
it shall be governed, are not prescribed by the statute, and
both are left to its discretion. In the reasonable exercise of
that discretion the court may adopt the rules of the common
law, or of equity, so far as the exigencies of the case may
require. The action of the court in permitting the petitioner
to file a supplemental petition was not therefore void. But
in our judgment it was not a *reasonable* exercise of its discre-
tion, and is not a precedent to be sanctioned. The petitioner
had no inchoate right when the original petition was brought,
and the practice, if sanctioned, would lead to abuse of our
laws, and tend to encourage and invite such application from
abroad—a result which the General Assembly and this court
have always sought to avoid. If therefore it appeared upon
the record in this case that the respondent objected, *in time,*
to the action of the court in that respect, we should unhesi
tatingly hold that action erroneous.

At the time the supplemental bill was filed the petitioner
had resided three years in the state, and was entitled to a di-
vorce. The court then had jurisdiction of the *subject-matter*
of the petition. The respondent was then in court defending
against the original petition, and as to that the court had ju-
risdiction of his *person;* but on that petition alone and the
facts found the court could not have passed a valid decree of
divorce. The supplemental bill was filed as part of that pro-
ceeding. But the respondent was not bound to submit to it.
He did, *apparently,* submit, for he continued to submit, with-
out any objection which appears of record, to the jurisdiction
of the court as to the *whole case* until after it was heard; and

if he did so *in fact*, he waived the error and can not now complain. The cases are numerous in our reports wherein this court has holden a party subject to the jurisdiction of the court, and bound by its proceedings although erroneous, because he submitted to them without objection until after a hearing upon the merits of the case. The last one, *Woodruff* v. *Bacon*, may be found in the present volume.

The respondent, however, insists that he did not in fact submit to the jurisdiction, and that he can not be holden to a waiver.

He says, in the first place, that he had no knowledge of the supplemental bill until after the hearing, and therefore could not have assented, and did not assent to or answer it. But this claim we are not at liberty to regard. The paper was regularly filed with the clerk as part of the proceedings in the case, and there is nothing in the record to show that it was not known to his counsel before or at the hearing; and it was not objected to in the subsequent remonstrance, and is not alluded to as a ground for a new trial, or assigned as error. Moreover, it does appear in the motion that the counsel for the petitioner claimed that the trial was on the supplemental bill, and does not appear that the fact was denied. It is an unsupported claim therefore, made for the first time in the argument, and can not be regarded.

The respondent insists, in the second place, that he can not be holden to a waiver, because the statute is *imperative*, that no divorce shall be granted in such a case, unless the applicant had resided three years in the state before the "*date of the petition.*" This objection would undoubtedly be fatal, if the decree had been based on the original petition alone. But we see nothing in the statute to prevent the court from granting a divorce to which the party was entitled after the lapse of the three years, if the respondent then submitted to the jurisdiction of the court, and an amendment of its proceedings, which does not exist in any other case. By the terms "date of the petition" the General Assembly undoubtedly meant the commencement of the proceeding. The provision of the statute in question was enacted in 1797, and has re-

mained in force and unaltered through all the compilations since made. At that time the issuing of the writ in the Common Pleas, or the exhibition of the bill, or issuing of the latitat in the King's Bench, were the commencement of the action in England; and the law of England was our law, until altered by the legislature or the courts. The General Assembly did not alter it; nor had it been changed by any decision of the Supreme Court, when Judge Swift published his System in 1796. (See Volume 2d, page 187.) There had been an earlier decision of the Superior Court looking that way, but Judge Swift did not regard it. The first decision of the Supreme Court altering the law, and making the *service* instead of the *issuing* of the writ the commencement of the action, was in 1801; but that case was not reported, and it was not till 1822 that the rule was fully and finally settled in *Jencks* v. *Phelps*, 4 Conn., 149. The date and time of issue are usually the same, and by the terms "date of the petition" therefore, the General Assembly intended the commencement of the proceeding and nothing more; and there is nothing peculiar or technical in the statute to prevent a submission to the jurisdiction and a waiver of error in a case like this as in other cases.

The respondent further insists that he could not waive, because he says that waiver implies collusion. It is certainly possible that a respondent may so waive defects, irregularities, or errors in the proceedings upon an application for a divorce, as to authorize the court to presume collusion and deny the petition. But waiver, especially of a jurisdictional fact which does not affect the right, does not necessarily import collusion; and it certainly can not be presumed in a case contested as this has been.

For these reasons we think there is no error in the record, and do not advise a new trial.

In this opinion the other judges concurred.