FLORENCE E. M. MERCER *v.* WALLACE H. MERCER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 10—decided November 8, 1944.

*Emanuel G. Goldstein,* for the appellant (plaintiff).

No appearance for the defendant.

ELLS, J. This action for divorce on the ground of intolerable cruelty was tried as an uncontested case. Judgment was entered dismissing the complaint, and the plaintiff has appealed.

She testified to various acts of cruelty inflicted upon her by her husband, but the trial court found that her testimony, "as well as her demeanor on the witness stand, lacked sincerity and veracity," and refused to find any facts tending to prove intolerable cruelty. The plaintiff now asks this court to correct the finding by adding all of the alleged occurrences, and upon the basis of a completely new finding to decide that the trial court erred in refusing to grant a divorce. She contends that, as her testimony was undisputed and uncontradicted, the trial court was bound to accept it.

This being an uncontested divorce case, it was particularly incumbent upon the trial court to satisfy itself that the plaintiff had sustained the burden which rested upon her of proving, by credible evidence, the well-settled requisites of intolerable cruelty. The court concluded that the testimony she offered was not entitled to belief. It is the judge of the credibility of witnesses, and that one or more witnesses testified to a fact does not make it an admitted or undisputed one which we can add to the finding. *Morse* v. *Morse*, 128 Conn. 138, 139, 20 Atl. (2d) 730; Conn. App. Proc., p. 124, note 36. As the finding cannot be corrected, there are no facts upon which a conclusion that the defendant had been guilty of intolerable cruelty can be predicated.

The trial court, in its finding, touched upon a matter which has not been discussed in any of the decisions of this court. It states by implication that it is the customary practice in ex parte divorce proceedings to require corroboration of the plaintiff's own testimony by that of two witnesses. We may take judicial notice

that it is also the practice of many of our trial judges to require that at least one of these witnesses shall not be related to the plaintiff. In the absence of unusual circumstances this constitutes a salutary procedure. The manner in which the Superior Court "shall proceed to hear and determine the application, and the rules by which it shall be governed, are not prescribed by statute, and both are left to its discretion." *Steele* v. *Steele,* 35 Conn. 48, 54. This discretion, of course, should be exercised wisely and reasonably.

In view of the claim here made that in an uncontested divorce case the court must accept the plaintiff's testimony, and of the fact that the dockets of the Superior Court are now crowded with such cases, we briefly review certain fundamental principles.

"When an attempt is made through the courts to undo a marriage, the State becomes in a sense a party to the proceedings, not necessarily to oppose, but to make sure that the attempt will not prevail without sufficient and lawful cause shown by the real facts of the case. . . . There can be no such thing as a 'legal right' to a divorce vested in any married person. 'The State does not favor divorce; and only permits a divorce to be granted when those conditions are found to exist, in respect to one or the other of the married parties, which seem to the legislature to make it probable that the interests of society will be better served and that the parties will be the happier, and so the better citizens, separate, than if compelled to remain together. The State allows divorces, not as a punishment to the offending party nor as a favor to the innocent party, but because the State believes its own prosperity will thereby be promoted.'" Chief Justice Andrews, in *Allen* v. *Allen,* 73 Conn. 54, 55, 46 Atl. 242. We quote at length from Judge Hamersley's opinion in *Morehouse* v. *Morehouse,* 70 Conn. 420, 426, 39 Atl.

516: "When our legislature, in 1843, adopted as grounds of divorce *a vinculo*, 'habitual intemperance' and 'intolerable cruelty,' it used these words with their ordinary meaning, but with special reference to what had been since 1639 our settled policy in respect to divorce; *i.e.*, marriage is a life status and should never be dissolved, unless one of the parties is guilty of conduct which in itself is a practical annulling and repudiation of the marriage covenant. Wilful desertion for such a length of time as the statute says shall conclusively prove a permanent abandonment and repudiation of all marital rights and duties, had been a ground for divorce. Following this analogy the legislature, in 1843, made grounds of divorce: intemperance so long continued that the fixed habit renders the party incapable of performing the duties of the marriage relation; and cruelty of such a nature as to be intolerable, and to render a continuance of the relation by the suffering victim impracticable. *Dennis* v. *Dennis*, 68 Conn. 186, 192. Mere faults of temper and of manner do not constitute such cruelty. There are . . . trials causing much weariness and suffering which parties to the marriage contract must bear; the policy of the State, as well as the sacred nature of the marriage covenant, requires patient endurance. But there are injuries and insults which are outside the pale of that covenant; submission to which was never contemplated, and which are not to be borne. No complete definition can be given, because the exhibitions of cruelty cannot be forecast." We repeated the essence of this opinion in *McEvoy* v. *McEvoy*, 99 Conn. 427, 431, 122 Atl. 100.

The trial court in the instant case acted with obvious regard for the applicable principles of law.

There is no error.

In this opinion the other judges concurred.