MEMORANDUM OF DECISION
MANFREDI, Judge.
This case was tried to the Court on January 22, 2008.
The complaint originally filed by the Plaintiff Pro Se alleges essentially that she fell sustaining serious personal injuries on July 7, 2002 as a result of a defective condition on the floor within the casino between a wooden pedestrian bridge and a marble walkway located in the retail mall area of the casino.
For ease of reference, the bridge will be referred to as the “Chihoulli Bridge.”
Testimony at the trial established that the Plaintiff was at the Mohegan Sun Casino on July 7, 2002 with her husband, Arnold Young, (now deceased) and had arrived between 1 p.m. and 2 p.m. in the afternoon. They had arrived with an ex-cux'sion tour and had walked together through the casino.
They separated as she wanted to take a walk through the mall and her husband, Arnold, was left behind sitting on a bench.
The Plaintiff walked over the Chihoulli Bridge, proceeded to a store selling leather items, looked around, left the store and returned back over the bridge. Returning over the bridge on her left side was a cocktail lounge with a waterfall and while walking off of the bridge her left foot got caught on a metal strip and she fell onto the asphalt tile. She was not holding the handrail at the time of her fall and stated that her heel got caught on the strip.
The Plaintiff indicated that her foot was caught on a little “gold” strip and it was partly up and not laying flat like the rest of the strip. She also stated that there were no nails in the part of the strip that was extended upward “like the rest of the strip.” Two security people eventually assisted her to her husband and called an ambulance. The security people took pictures at the area where the fall occurred. The Plaintiff was taken by ambulance to Backus Hospital where her injuries were treated and she was released. She subsequently received treatment at Lutheran Hospital in New York including surgery to her left leg.
Michael Miller, Professional Engineer, testified on behalf of the Plaintiff that he examined the bridge on May 10, 2007 and noted that the floor in the area where the Plaintiff said she had fallen was a poured floor separated by brass strips. Mr. Miller indicated that the wooden surface of the bridge had been re-planked from the time the pictures were taken by the Plaintiff and the time of his inspection, and he had no idea what had happened between the time of the fall and the time of the photographs.
*457 At the time of his inspection, a brass strip approximately 18½ inches across appeared to be missing from the foot of the bridge. Mr. Miller noted that if the Plaintiffs testimony were correct, that the brass strip was raised over a quarter of an inch and the American Society for Testing and Materials Standards would require a change in floor treatment to eliminate a tripping hazard by the rise. However, Mr. Miller could not testify from his own inspection whether such a condition existed at the time of the Plaintiffs fall. Mr. Miller also testified that because the interior of the casino is a “rich” visual field and that the floor surfaces within the casino are generally in excellent condition, there could be an expectancy on the part of patrons that the entire floor would be in excellent condition. Mr. Miller also indicated that he did not excavate the filler to see if there was any brass underneath it and did not know how the metal strips were attached to the flooring.
Victor Lugo, a security supervisor for the Mohegan Sun, was on duty on the day of the accident and responded to it at 3:22 p.m. with Dominic Capalbo. In a report prepared that same day, he indicated that he had met with the Plaintiff, and after asking her several times where the accident had occurred, determined that she had fallen in front of Trailblazer’s which is located at the opposite end of the Chihoulli Bridge from the area where the Plaintiff testified that she fell Based on the Plaintiffs indications, Mr. Lugo took photographs of the area in front of Trailblazer where the Plaintiff indicated she had tripped.
Peter Bernier of the Engineering Department at the Mohegan Sun testified that he is familiar with the Chihoulli Bridge which was originally constructed in 2000 and reconstructed with hard wood in 2004. The metal stripping at each end of the bridge was unchanged and was basically constructed as an L shaped flange attached to the subfloor with a pin tack and terrazzo material poured over it so that no nails or screws topped the surface of the terrazzo material. On the date of trial, he had examined the area in question and discovered underneath a dirt and wax buildup covering the brass flange.
Finally, Marylou Morrissette, the Director of Risk Management for the Mohegan Sun Casino, testified that in the eight or nine years that she has been employed by the Mohegan Sun, no other incidents have been reported to her office involving a brass strip on the bridge.
DISCUSSION
The Plaintiffs action is governed by the provisions of Tribal Ordinance 2001-07, known as the “Mohegan Torts Code,” hereinafter the “Code.” The code applies to “any and all tort claims arising on the Mohegan reservation that may be brought against the MTGA .... ” and, is “the exclusive means of adjudication of claims brought against the MTGA ...” See Schiff v. Mohegan Tribal Gaming Authority, 2 G.D.R. 117, 6 Am. Tribal Law 519, 2005 WL 6238998 (2005)
As noted in Schiff Mohegan Tribal Ordinance 95-4 establishes the substantive law of this court to be the Tribal Ordinances and Regulations as well as the General Statutes of the State of Connecticut and the Common Law of the State of Connecticut except to the extent that they are in conflict with Mohegan Tribal Law.
The Plaintiffs complaint alleges a defective condition on the floor between the wooden bridge and terrazzo walkway “which existed due to the negligence of the Defendants.” The complaint also alleges improper maintenance and repairs to the bridge, failure to warn of defective condi *458 tions or to place signs and barricades, failure to comply with laws, ordinances, and regulations and actual and constructive notice of the alleged defects.
This court has recently noted the Connecticut Supreme Court’s summary of premises liability set out in Kelly v. Stop and Shop, Inc., 281 Conn. 768, 918 A.2d 249 (2007) as follows:
“Typically, [f]or [a] plaintiff to recover for the breach of a duty owed to [him] as [a business] invitee, it [is] incumbent upon [him] to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused [his injury] or constructive notice of it.... [T]he notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it.... In the absence of allegations and proof of any facts that would give rise to an enhanced duty ... [a] defendant is held to the duty of protecting its business invitees from known, foreseeable dangers.” (Citations omitted; internal quotation marks omitted.) Id.
281 Conn. at 794, 918 A.2d 249.
It needs no citation to state that in a civil ease the Plaintiff has the burden of persuasion meaning that the Plaintiff must produce sufficient evidence to satisfy the trier of facts of the existence of facts constituting the essential elements of his or her claim. Furthermore,
“When the evidence is equally balanced or in equipoise, then the proponent has not met his or her burden of persuasion. Brodie v. Connecticut Co., 87 Conn. 363, 364, 87 A. 798 (1913). A party has not met the burden of persuasion merely because the evidence is uncontested or uncontroverted because the trier, as the judge of credibility, may disbelieve such evidence. Mercer v. Mercer, 131 Conn. 352, 353, 39 A.2d 879 (1944).” Handbook of Connecticut Evidence, 4th Edition, Tait and Prescott, Section 3.5.1, Page 118.
In order to succeed in her claim, the Plaintiff must in this case prove that the Defendant had actual or constructive notice of the “very defect” which caused her injuries. Actual notice would be proved by evidence which shows that the Defendant, in fact, knew of the defect in question prior to the event causing the injuries and had sufficient time in which to correct it.
Constructive notice, on the other hand, would be proved by evidence that the defect in question had existed for a period of time such that the possessor of the property had the opportunity to discover it upon a reasonable inspection. See Schiff v. Mohegan Tribal Gaming Authority, supra., and citations therein.
Based on the evidence presented, the court is unable to conclude that the Plaintiff was injured as a result of a defect in the premises which existed for a period of time sufficient for the Defendant to have known of it and taken actions to correct it. There was certainly no evidence that the Defendant had actual notice of any defect which may have caused the Plaintiffs injuries.
As noted, the Plaintiff has the burden of persuasion in all essential aspects of her claim. Here, the evidence is unclear as to where the fall actually occurred.
Although the Plaintiffs testimony at trial was clear that she believed the accident occurred at the foot of the Chihoulli Bridge with the waterfall and cocktail area to her left, the incident report for the date in question and the testimony of Mr. Lugo indicate that at the time of the accident, she believed she fell near Trailblazers at the other end of the bridge. The court is *459 not convinced that the Plaintiff has a clear recollection of where the accident actually took place.
Moreover, even if we assume that the accident occurred at the end of the Chi-houlli Bridge described by the Plaintiff in her testimony and photographs, the court is unable to conclude based on the testimony at trial that a metal strip was extended above the level of the floor and bridge for any period of time prior to the Plaintiffs injuries such that the Defendant would have had notice of such a condition and been able to repair it. In fact, the photographs and testimony of both the Plaintiffs expert and the Defendant’s Engineering Department Supervisor indicate that the brass strip in the area in question was receded into the floor and buried by either dirt or debris buildup and, in fact, not extending above the floor in any manner. In addition, it is evident from the testimony of Mr. Bernier that no repairs to this area had been undertaken or done by the Defendant subsequent to the Plaintiffs accident and the court must therefore conclude that the strip in fact did not extend in a way to create a hazard for pedestrians.
Therefore, the court finds that the Plaintiff has failed in her burden of proof and directs that judgment enter on behalf of the Defendant and against the Plaintiff.