STATE *v.* THOMAS F. MEDBURY.

8 543
20 268

Upon the trial of an indictment for adultery, the admissions of the accused that he is married are competent evidence of the fact of marriage.

INDICTMENT for adultery, and motion for new trial, upon two grounds. 1st. That the judge who presided at the trial erred in admitting as evidence the statements of defendant that he was a married man. 2d. That his statements in this regard were not sufficient evidence of the fact to sustain the verdict of guilty.

The cause was shortly argued by *Edwin Metcalf* in support of the motion, and by the Attorney General, *Willard Sayles, contra.* The evidence and authorities are sufficiently stated in the opinion of the court, read by DURFEE, J.

The exceptions in this case raise the question whether, where a man is on trial for adultery, the allegation of the indictment that he is a married man may be proved by evidence of his own admissions to that effect. Upon this question there is some conflict of authority. In New York, *The People* v. *Humphrey*, 7 Johns. R. 314; and in Connecticut, *State* v. *Roswell*, 6 Conn. 446, upon criminal charges involving the same point, it has been held that the marriage cannot be so proved. In Massachusetts, in an indictment against two persons for lascivious cohabitation, one of them being a married woman, it was held that her admission, twelve years before, followed by cohabitation and the birth of children, was insufficient evidence of the marriage. *Commonwealth* v. *Littlejohn et al.* 15 Mass. 163, and according to a citation in *Cook* v. *The State*, 11 Geo. R. 53, of a case to which we have not had access, a similar decision has been made in one other State.

Of these cases, those which we have examined, in so far as they rest upon authority, rest mainly upon the authority of *Morris* v. *Miller*, 4 Burr, 2057. This was an action for criminal conversation in which the evidence that the woman alleged to

have been debauched was the plaintiff's wife, was the declaration of the defendant to his landlord, that she was the plaintiff's wife, and that he had committed adultery with her.　The opinion of the court was delivered by Lord Mansfield, who said :—
" We are all clearly of the opinion that in this kind of action, an action for criminal conversation with the plaintiff's wife, there must be evidence of a marriage *in fact;* acknowledgment, cohabitation and reputation are not sufficient to maintain this action."　And he also said : " In prosecutions for bigamy a marriage in fact must be proved."

In *Birt* v. *Barlow,* Dougl. 171, decided two years later, Lord Mansfield remarked : " An action for criminal conversation is the only civil case where it is necessary to prove an actual marriage.　In other cases, cohabitation, reputation, &c., are equally sufficient, since the marriage act as before.　But an action for criminal conversation has a mixture of penal prosecution, for which reason, and because it might be turned to bad purposes by persons giving the name and character of wife to women to whom they are not married, it struck me in the case of *Morris* v. *Miller,* that in such an action a marriage in fact must be proved."

It will be observed that in *Morris* v. *Miller,* the admission was not made by a party to the marriage, but by a person who, unless present at its solemnization, could have known of it only by reputation ; and it is not clear from the language of Lord Mansfield, either in that case or in *Birt* v. *Barlow,* that he meant to go further than simply to exclude such testimony or admissions as are not derived from an actual knowledge of the fact of marriage.　Testimony or admissions derived from actual knowledge would certainly not tend to produce the mischiefs which he declares it to have been his purpose to guard against. This is a view of the decision which was taken soon after it was made in *Rigg* v. *Curgensen,* 2 Wils., 395, 399, and in *Truman's case,* 1 East. P. C. 470.　In the latter case, one of the judges observed upon *Morris* v. *Miller,* that " there was a distinction between an action for criminal conversation and an indictment for this offence (bigamy) ; that in the former the acknowledg-

ment and cohabitation of the plaintiff could not prove his marriage as against the defendant; and the acknowledgment of the defendant in such an action of the plaintiff's marriage, might be a fact not within his own knowledge; as it must be if a defendant in bigamy admitted his own marriage." And see Bull. N. P. 28; 2 Stark. Ev. (5th Am. ed.) 652; 2 Greenl. Ev. § 49.

But the cases which maintain that on a trial for·adultery or bigamy the marriage of the defendant may not be proved by his own admissions, are not only thus open to·criticism as to the grounds on which they rest, but they are also, we think, against the weight of authority.

In the case of *Mary Norwood,* who was indicted for petit treason, or the murder of her husband, her confession and cohabitation with the deceased were admitted, in connection with other and slighter testimony, as evidence of her marriage with him, 1 East. P. C. 337, 470. This case was decided in 1765, about two years before *Morris* v. *Miller,* and Lord Mansfield took part in the decision. In the light of this fact it can hardly be believed that he meant to go,. in *Morris* v. *Miller,* so far as has been supposed in some of the American cases which we have before cited.

In *Truman's* case, 1 East. P. C. 471, which was an indictment for bigamy, decided in 1795, the principal evidence of the prisoner's first marriage was his own confession previously made, coupled with cohabitation, and the copy of a legal proceeding against him and his wife for improperly contracting the marriage wherein they both acknowledged their marriage. This. was deemed sufficient. The remark of one of the judges on *Morris* v. *Miller,* in giving decision in this case, we have already quoted. So in another case of bigamy, the prisoner was convicted upon proof of his admission, deliberately made, of both marriages, in the presence of his first wife, before a magistrate, 2 Starkie's Ev. 654, note. *Reg.* v. *Upton,* 1 Carr & K. 165 note.

In *Reg.* v. *Simmonsto,* 1 Carr. & K. 164, the prisoner was convicted of bigamy, the chief evidence of his former marriage.

being his own admission that he had been previously married to a woman, with whom he had lived as man and wife, by a presbyterian minister in New York. In this case, which was at *nisi prius*, the only difficulty which the judge felt was that the admission was not a simple admission of marriage, but an admission of marriage by a presbyterian minister in New York, and yet he left it to the jury, upon that admission, to find whether the marriage was binding upon the defendant in the country where it was performed.

These cases leave little room for doubt, that in England, on a trial for bigamy or other criminal charge alleging the marriage of the defendant, such marriage may be proved by his own admissions. In this country there are several cases to the same effect. Thus, in *Cook* v. *The State*, 11 Geo. R. 53, where the defendant was indicted for incestuous intercourse with his own daughter. In *Cayford's* case, 7 Greenl. 57, against a married man for lewd and lascivious cohabitation ; and in *Ham's* case, 11 Me. 391, for adultery, it was held, that the marriage might be proved by the admissions of the defendant. *Cayford's* case required the court to go no further than to say the evidence was admissible where the marriage was solemnized out of the state or country, and accordingly the court confined their decision to that point, though their reasoning went beyond it ; but subsequently, in *Ham's* case, they decided that whether the marriage was within or without the state, made no difference. These cases are entitled to the more respect from the fact, that they appear to have been decided after careful consideration and study of the authorities. See also *Cameron* v. *The State*, 14 Ala. 546 ; *Forney* v. *Hallacher*, 8 Serg. & R. 159. Indeed, as is remarked by Mr. Greenleaf in his book on evidence, no good reason has been given to distinguish this from other cases of admission, where the evidence may be received, though it may not amount to sufficient proof of the fact, 2 Greenl. Ev. § 49. We think, therefore, both upon principle and precedent, that the exception must be over-ruled.

Such admissions, however, when offered in proof of marriage, on a trial for adultery, are to be received with caution ; and are

entitled to greater or less weight according to the time, place and circumstances under which they were made. If made before the offence, and for purposes entirely foreign to the offence, and not to the prejudice of the party making them, they may, though admissible, be deserving of little or no credit. Inasmuch, therefore, as the defendant in this case has applied for a new trial on the ground that the verdict is against the evidence, as well as on the ground of a misruling by the court, it becomes our duty to look to the evidence in this regard.

The evidence is to the effect that the defendant, having enticed two girls to his shop, there committed the offence with one of them. He was arrested immediately afterwards. The policeman who made the arrest testified: "He wanted to know why. I arrested him; I said, I guess you know well enough. He seemed to feel very badly, and said that he would n't have his wife and children know it for anything. Offered me $1000 to let him go; said he was a married man." He was taken to the Station House. The clerk of the police testified that when there "He said he was a married man and wanted permission to write to his wife. I told him he might, but I must see the letter, and if there was nothing objectionable, would send it. He wrote a note on a leaf of his memorandum book, and said in it that he had got into some trouble with two girls; that he should leave Providence as he couldn't stay here. He didn't sign it." The Chief of Police testified: "Medbury said he was a married man; I saw the letter he wrote; it commenced 'Dear wife.' It was not directed or signed. I instructed the clerk not to send it. It said he had got into some difficulty with some girls, and that he should leave Providence. It was written on a blank page of a memorandum book, and when Medbury wanted his book back I had the leaf cut out."

Such were the admissions, according to the testimony as reported to us, which were made by the defendant; and we cannot say, considering the time, place and circumstances under which they were made, that we think the jury erred in drawing from them the conclusion that the defendant was at the time a married man, having a wife then living.