LINDA REMKIEWICZ *v.* EDWIN REMKIEWICZ

LOISELLE, BOGDANSKI, HEALEY, PARSKEY and WRIGHT, Js.

---

Argued December 6, 1979—decision released March 18, 1980

*Jacob J. Goldman,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (state).

*Louis Parley,* for the appellee (plaintiff).

PARSKEY, J.  Linda and Edwin Remkiewicz were married in February, 1971.[1]  In March, 1975, Linda instituted an action to dissolve this marriage. Because at that time Linda had been receiving state assistance for herself and her child Jennifer, the attorney general, by virtue of General Statutes § 46-63 (now § 46b-55), became a party to the action and moved for an order of support for Jennifer. Jennifer had been born to Linda in 1967 while she was married to one Eldridge Harris.  The trial court denied the motion for lack of jurisdiction over Jennifer and the state has appealed.

---

[1] The complaint, counterclaim and judgment contained in the printed record before us incorrectly indicate 1970 as the year of marriage.  The court, with the agreement of the parties, allowed the error in the complaint to be amended at trial.

In 1972, the defendant filed an affidavit of parentage with the bureau of vital statistics to effect a change in Jennifer's birth certificate and to reflect the defendant to be her father and her name to be Jennifer Remkiewicz. Jennifer's biological father is one Thomas Farretta of the state of Washington. Farretta informally acknowledged Jennifer as his child and provided support for her for two years.[2] Linda and the defendant first met in March, 1970. Although the defendant was not her natural parent, from the time of his marriage to Linda until the summer of 1975, Jennifer regarded him as her father and the defendant treated her as his child, publicly acknowledging her to be such and taking her as a tax allowance. Because the defendant was neither the natural nor adoptive parent of Jennifer, the trial court felt it had no jurisdiction to enter an order for her support and therefore denied the state's motion.[3]

I

The order of support was sought by the state in a dissolution action. The question arises whether the court had any authority to issue such an order as against a husband who was neither the biological

[2] Certain facts in the court's finding are drawn from a report filed by an attorney appointed by the court to represent the minor child in this action. The state assigned error regarding the court's failure to accept the conclusions contained in the report and the court's ruling allowing into evidence testimony which contradicted portions of the report. The state's sixth assignment of error apparently accepts the incorporation of the report in the finding. In any event no objections to this report being before the trial court have been briefed. See *Healy* v. *White*, 173 Conn. 438, 441, 378 A.2d 540 (1977).

[3] The support order sought by the state would not have required the court to have jurisdiction over the minor child. See *Beardsley* v. *Beardsley*, 144 Conn. 725, 727, 137 A.2d 752 (1957). Consequently, we decide this appeal on other grounds.

nor adoptive parent of the child for whom support was sought. To begin with, the power of the Superior Court to dissolve a marriage emanates wholly from statute. *Morrow* v. *Morrow,* 165 Conn. 665, 668, 345 A.2d 561 (1974); *Steele* v. *Steele,* 35 Conn. 48, 54 (1868). Its further authority to issue any order as to the custody, care and education of the minor children of the parties, as an incident of the dissolution action, is also governed by statute. *Dunham* v. *Dunham,* 97 Conn. 440, 444, 117 A. 504 (1922). Authority exists, under General Statutes § 46-42 (now § 46b-56) and § 46-58 (now § 46b-58), to order support for minor children, including children adopted by both spouses and natural children of one spouse who are adopted by the other. The word "children" in § 46-42 means legitimate children. See *State* v. *Wolfe,* 156 Conn. 199, 203, 239 A.2d 509 (1968).

The duty to support which the court enforces under § 46-42 is one imposed on parents. See General Statutes § 46-57 (now § 46b-84). The defendant was not Jennifer's parent because he was not her biological father, he was not her father by adoption, nor was he adjudged to be her father by a judgment of the Court of Common Pleas[4] in a paternity proceeding brought under General Statutes § 52-435a (now § 46b-160) or by a formal acknowledgement of paternity filed with that court under § 52-442a (now § 46b-172). Thus, the defendant was under no statutory obligation to provide parental support.

[4] Paternity matters are now heard in the Superior Court. General Statutes § 51-164s; Public Acts 1976, No. 76-436, § 498.

## II

The state claims the benefit of General Statutes § 45-274.[5]  This section, in part, provides that "[c]hildren born before marriage whose parents afterwards intermarry shall be deemed legitimate and inherit equally with other children."  Had the defendant been the child's natural parent or had he been adjudged her parent his subsequent marriage to the child's mother would have legitimated her for all purposes under § 45-274.  *Simsbury* v. *East Granby,* 69 Conn. 302, 303, 37 A. 678 (1897). The state argues that, once legitimated, the child would have all of the support rights of a natural child of the marriage or an adopted child.  In order to prevail based upon this statute, the state must prove that the defendant is Jennifer's natural parent.   The evidence, however, shows that the defendant did not meet Jennifer's mother until 1970, some three years after Jennifer's birth.  There was no evidence other than the defendant's affidavit of paternity which suggests otherwise.

The state relies exclusively on the defendant's affidavit of parentage to establish him as Jennifer's natural parent.   This affidavit was an evidential admission.  Such admissions, while relevant as proof of the matter stated; *Worden* v. *Francis,* 153 Conn. 578, 582, 219 A.2d 442 (1966); are not conclusive. *Toffolon* v. *Avon,* 173 Conn. 525, 537, 378 A.2d 580 (1977).  An evidential admission is subject to expla-

[5] In its brief the state has set forth General Statutes § 45-274 in its present form, including subsection (b) (2) which provides rights of inheritance for a child born out of wedlock from a person who "has acknowledged under oath in writing to be the father of such child."   This subsection was added in 1978 by Public Act 78-199, § 1 and therefore is not applicable to this case.

nation by the party making it so that the trier may properly evaluate it. *Kucza* v. *Stone*, 155 Conn. 194, 198, 230 A.2d 559 (1967). The explanation offered was that the defendant intended to adopt Jennifer but used the acknowledgement for the purpose of changing the birth certificate as a less expensive method than a formal adoption proceeding. Other evidence in the case clearly indicates that the defendant could not have been Jennifer's natural parent. The trial court was not required to accept the affidavit as proof of Jennifer's parentage.

## III

Because the defendant's statement of parentage was made under oath and because the defendant not only publicly acknowledged Jennifer as his child but also took her as a tax allowance, the state argues that the defendant should be estopped from denying his paternity.[6] " 'There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist.' *Breen* v. *Aetna Casualty & Surety Co.*, 153 Conn. 633, 643, 220 A.2d 254; *Themper* v. *Themper,* 132 Conn. 547, 550, 45 A.2d 826." *Morrow* v. *Morrow,* supra, 669. No prejudice has been shown here. It appears from the evidence that neither the state

---

[6] We do not discuss the state's claim of waiver because as used in the context of this case the concepts of waiver and estoppel are used interchangeably. The label counts for little. See *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 564, 316 A.2d 394 (1972).

nor Jennifer's mother changed position to the injury of either one in reliance on the affidavit of parentage.

## IV

Finally, the state argues that public policy dictates in favor of permitting a written acknowledgement to furnish a sufficient basis for the issuance of a support order. In this case, however, public policy cuts two ways. The adoption statutes contained in chapter 778 of the General Statutes express a legislative intent that no person shall acquire parental status unless certain formalities are observed. A parent has rights as well as duties. If a stepfather could acquire parental rights through the simple expedient of changing his stepchild's birth certificate, all sorts of mischief could result. If the state commissioner of income maintenance wishes to impose obligations of support on persons who acknowledge paternity in writing; see General Statutes § 17-324; *State* v. *Wolfe,* supra, 206; the legislature is the appropriate forum to consider his concerns.

There is no error.

In this opinion the other judges concurred.