## STATE OF CONNECTICUT *v.* JOHN F.M.
## (SC 17677)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued September 20, 2007—officially released February 19, 2008

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's

attorney, and *Stacey Haupt,* assistant state's attorney, for the appellant (state).

*Martin Zeldis,* public defender, for the appellee (defendant).

*Joseph P. Secola* filed a brief for the National Legal Foundation as amicus curiae.

*Opinion*

ROGERS, C. J. In this certified appeal,[1] we must determine whether the Appellate Court properly reversed the judgment of conviction of the defendant, John F.M.,[2] of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2)[3] for engaging in sexual intercourse with his stepdaughter. The Appellate

---

[1] We granted the state's petition for certification to appeal limited to the following issues: "1. Did the Appellate Court properly decide that the defendant's conviction of sexual assault in the third degree under General Statutes § 53a-72a (a) (2) was not supported by sufficient evidence that the defendant was the stepfather of the victim?

"2. Did the Appellate Court properly decide that . . . § 53a-72a (a) (2) violated the guidelines of equal protection?" *State* v. *John M.,* 278 Conn. 916, 916–17, 899 A.2d 622 (2006).

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Following this court's grant of certification, the appellate clerk's office directed the parties to refer to this case as *State* v. *John F.M.,* rather than *State* v. *John M.,* to avoid confusion with an unrelated case, *State* v. *John M.,* Docket No. SC 17398, pending in this court. See *State* v. *John M.,* 273 Conn. 916, 916–17, 871 A.2d 372 (2005) (granting petition for certification to appeal). Accordingly, we refer to the defendant as John F.M.

[3] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person . . . (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21."

General Statutes § 46b-21 provides: "No man may marry his mother, grandmother, daughter, granddaughter, sister, aunt, niece, stepmother or stepdaughter, and no woman may marry her father, grandfather, son, grandson, brother, uncle, nephew, stepfather or stepson. Any marriage within these degrees is void."

Court concluded that (1) the jury reasonably could not find, on the basis of the defendant's admission and the testimony of the victim, that a stepfather-stepdaughter relationship existed, and (2) § 52a-72a (a) (2) violates the equal protection clause of the federal constitution[4] because it prohibits sexual intercourse only between individuals of the opposite sex who are related within certain degrees of kinship. See *State* v. *John M.*, 94 Conn. App. 667, 673–74, 694, 894 A.2d 376 (2006). We conclude that the evidence was sufficient to support the defendant's conviction, and that § 53a-72a (a) (2) applies equally to sexual intercourse between persons of both the opposite sex and the same sex who are related within certain degrees of kindred. Accordingly, we reverse the judgment of the Appellate Court.

The jury reasonably could have found the following facts, as summarized in part by the Appellate Court's opinion. On April 22, 2002, the defendant lived with his wife, J, and her daughter from a prior relationship, the victim,[5] who was seventeen years old. "The victim, a junior in high school, stayed home from school that day due to sickness. The only other person home that morning was the defendant. While watching a movie together in the defendant's bedroom, the defendant engaged in oral sex and vaginal intercourse with the victim." Id., 668–69.

The defendant subsequently was arrested and charged with one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4),[6]

---

[4] The federal equal protection clause, § 1, of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[5] Consistent with the Appellate Court opinion, we refer to the complainant as the victim.

[6] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (4) such other person is less than eighteen years old and the actor is such person's guardian or

and one count of sexual assault in the third degree in violation of § 53a-72a (a) (2). At the close of evidence in the defendant's jury trial, the defendant moved for a judgment of acquittal on both counts. The defendant claimed that the evidence was insufficient to establish that, at the time the sexual assault had occurred, he was responsible for the general supervision of the victim's welfare as required by § 53a-71 (a) (4), or that he was legally married to the victim's mother as required by § 53a-72a (a) (2). The trial court granted the motion with respect to the first count, but denied the motion with respect to the second count, and submitted the case to the jury for deliberation. Thereafter, the jury found the defendant guilty of sexual assault in the third degree in violation of § 53a-72a (a) (2), and the trial court rendered judgment in accordance with the jury's verdict.

The defendant appealed from the judgment of the trial court to the Appellate Court claiming, inter alia, that the evidence was insufficient to establish beyond a reasonable doubt that he was the victim's stepfather.[7] The Appellate Court agreed that, under *State* v. *Roswell*, 6 Conn. 446 (1827), "in incest cases, the defendant's admission alone is insufficient to establish either a husband-wife or parent-child relationship." *State* v. *John M.*, supra, 94 Conn. App. 673. The Appellate Court concluded that, pursuant to *Roswell*, the state must submit written documentation evidencing the legality and validity of the familial relationship, such as a marriage

---

otherwise responsible for the general supervision of such person's welfare . . . ."

[7] The defendant also claimed that (1) the trial court improperly instructed the jury on an essential element of § 53a-72a (a) (2), namely, the existence of a stepfather-stepdaughter relationship and (2) the defendant selectively was prosecuted for a violation of § 53a-72a (a) (2) based on his sex and age and, therefore, his conviction violates the equal protection clause of the federal constitution. The Appellate Court did not address either of these claims.

license or a birth certificate or, alternatively, the state must adduce testimony from a witness with firsthand knowledge concerning the legality and validity of the familial relationship, such as a witness to the solemnization of the marriage or the birth. Id., 674. In so concluding, the Appellate Court rejected the state's claim that *Roswell* had been overruled sub silentio by § 8-3 (1) (A) of the Connecticut Code of Evidence,[8] which provides that the admissions of a party opponent may be admitted into evidence against him or her for substantive purposes, because the Appellate Court knew "of no authority indicating that a decision of the Connecticut Supreme Court may be overruled by the promulgation of rules of evidence. Rather, the overruling of *Roswell* remains exclusively the province of that court." Id., 673–74 n.5. Because neither the victim's birth certificate nor the testimony of a witness with firsthand knowledge concerning the victim's parentage had been admitted into evidence, the Appellate Court concluded that the evidence was insufficient for the jury reasonably to find that J was the victim's mother, despite the defendant's admission and the victim's testimony concerning this fact.[9] Id., 674.

The Appellate Court further concluded that the defendant's conviction under § 53a-72a (a) (2) violates the equal protection clause of the federal constitution because the statute prohibits sexual intercourse between opposite sex individuals, but not same sex

---

[8] Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . .

(1) . . . A statement that is being offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . ."

[9] The Appellate Court concluded, however, that the evidence was sufficient for the jury reasonably to find that the defendant and J legally were married when the sexual assault occurred because J's eldest daughter, L, testified that she had witnessed their marriage ceremony. *State* v. *John M.*, supra, 94 Conn. App. 671–73.

individuals, related within certain degrees of kindred. Id., 676–78. In arriving at this conclusion, the Appellate Court noted that § 53a-72a (a) (2) criminalizes sexual intercourse between persons who are prohibited from marrying under General Statutes § 46b-21, which, in turn, references only male-female unions within certain degrees of kindred. Id., 676–77. Because "kindred persons engaged in homosexual relations are similarly situated to those engaged in heterosexual relations"; id., 678; and because the statute's prohibition of heterosexual relations alone is not rationally related to a legitimate governmental interest; id., 685–94; the Appellate Court concluded that the statute was unconstitutional. Id., 694. This certified appeal followed.

After we granted certification to appeal, we ordered the parties to file supplemental briefs addressing the following question: "[D]id the Appellate Court properly conclude [with respect to the defendant's insufficiency of the evidence claim] . . . that the judges of the Superior Court lack the authority to promulgate rules of evidence overruling a decision of the state Supreme Court?" In light of our conclusion in part I of this opinion that the evidentiary rule articulated in *Roswell* had been overruled sub silentio by subsequent decisions of this court prior to the adoption of the Connecticut Code of Evidence in 1999, we need not and, therefore, do not reach the supplemental question.

I

The state first claims that the Appellate Court improperly concluded that the evidence was insufficient to support the defendant's conviction under § 53a-72a (a) (2). Specifically, the state claims that the Appellate Court improperly relied on *State* v. *Roswell*, supra, 6 Conn. 446, to conclude that either written documentation or the testimony of a witness with firsthand knowledge of the victim's parentage is required to prove the

existence of a familial relationship beyond a reasonable doubt because *Roswell* has been overruled sub silentio by subsequent decisions of this court. The state further claims that, if we conclude that *Roswell* no longer is good law, then the defendant's admission and the victim's testimony were sufficient to establish the existence of a stepfather-stepdaughter relationship and, therefore, to support the defendant's conviction under § 53a-72a (a) (2). The defendant responds that *Roswell* remains good law and that the rule articulated therein "is as applicable today as it was nearly two centuries ago." We agree with the state.

We first address the state's claim that *Roswell* has been overruled by subsequent decisions of this court. The continued viability and applicability of the common-law rule announced in *Roswell* presents this court with a question of law over which our review is plenary. See, e.g., *State* v. *Colon*, 272 Conn. 106, 303, 864 A.2d 666 (2004) (interpretation of common law is question of law), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

In *Roswell*, the defendant was charged with the crime of incest for engaging in sexual relations with his legitimate daughter. At trial, the state had offered into evidence "the [defendant's] confessions, at various times, that the said [victim] was his daughter; that her mother . . . was his lawful wife; accompanied with evidence that they had cohabited together as husband and wife, uninterruptedly, for more than thirty years last past, and had always been reputed husband and wife; and also, that the said [victim], now about twenty-one years of age, had lived with her reputed parents from the time of her birth." *State* v. *Roswell*, supra, 6 Conn. 447. The defendant objected to the admission of this evidence, claiming that the state must prove the existence of a marriage *in fact* and that "neither reputation, cohabitation nor the confession of the [defendant] that

he was married, could be received." Id. The trial court overruled the defendant's objection, and the jury found the defendant guilty of the crime charged. Id.

On appeal to this court, the defendant claimed that, "whenever a marriage is alleged in an indictment or information, and a marriage is essential to constitute the act a crime, a marriage in fact must be proved; and that the proof must be either by a copy of the record of the marriage, or the testimony of a witness who was present at its celebration: and that at least proof of cohabitation, reputation or confession of the [defendant], of the fact, is not sufficient." Id., 448–49. After reviewing the common law of England and of our sister states, this court agreed with the defendant that, because marriage in fact was an element of the crime charged, in that the defendant had been charged with engaging in unlawful sexual relations with his *legitimate* daughter; id., 450; the challenged testimony was "inadmissible" and "wholly insufficient" to support his conviction.[10] Id., 451. This court acknowledged that, in

---

[10] We note that this was the minority rule among our sister states. See, e.g., *State* v. *Hughes*, 35 Kan. 626, 629, 12 P. 28 (1886) ("the weight of authority and the better reason support the proposition that the acts and declarations of the parties, coupled with cohabitation, are competent evidence to go to the jury in proof of marriage"); id. ("As a general rule, the confession of a party voluntarily and deliberately made, is evidence of the highest nature against him. The objections urged against testimony of this character in a prosecution for bigamy, are that the confession may have been lightly made, or stated by parties living in a state of fornication for the purpose of avoiding public censure or public prosecution; but these are reasons which go to the credibility rather than to the competency of the testimony."); *Commonwealth* v. *Jackson*, 74 Ky. 679, 686, 11 Bush 679 (1876) ("[N]either the common law of England, as adopted in this country, or the American common law, as recognized by the courts of the various states, requires us to hold that one charged with the crime of bigamy can not be convicted upon clear and satisfactory proof of his declarations that the alleged wife is legally such when those declarations are coupled with evidence of cohabitation with her, and her introduction by him into a community where [she] resides as his wife. We think the safety, the happiness, and the honor of families, the good order of society, the preservation of the public morals, and a due regard for public decency and individual virtue, demand that the rules of the law should furnish every facility for the punishment

most other cases, evidence of this nature is admissible "where a marriage is in question." Id., 450. In criminal cases, however, such evidence is inadmissible and insufficient because "[t]he cohabitation of persons as husband and wife, without any marriage, is too frequent to need comment," and many individuals falsely represent themselves to be married "to justify [their] conduct and screen [themselves] from censure and punishment." Id., 451. Thus, "[u]nlike confessions of facts in ordinary cases, made against one's interest, these are not unfrequently prompted from the most selfish motives. Besides, a man or woman may verily suppose a marriage to have been consummated, when no lawful marriage ever took place. Ignorance of the law on this subject may be presumed, in many cases . . . ." Id. Accordingly, this court reversed the defendant's conviction and remanded the case to the trial court for a new trial. Id.

Our review of this court's jurisprudence over the past 180 years compels us to conclude that *Roswell* has been overruled sub silentio by subsequent decisions of this court and, therefore, that the admissions of a criminal defendant not only are admissible, but often are suffi-

of crime which a proper regard for the security of the innocent will allow."); *Wolverton* v. *State*, 16 Ohio 173, 177 (1847) (noting split of authority and concluding that defendant's admission concerning marital status was admissible because "[w]ere courts to reject proof of confession when the time, manner, and circumstances under which it was made, were such as tended to weaken or destroy its force, they would be substituting, in fact, their own judgment for that of the jury, and would make it their business to weigh and estimate the value of evidence to the exclusion of those who, by the law, are the legitimate tribunal for that purpose"); *State* v. *Medbury*, 8 R.I. 543, 544–45 (1867) (distinguishing English common-law authorities because criminal conversation is tort action in which plaintiff has knowledge of, and control over, evidence concerning marital status, whereas bigamy is criminal action in which state does not have knowledge of, or control over, evidence concerning defendant's marital status); *State* v. *Medbury*, supra, 545 (rule excluding evidence of defendant's admissions, cohabitation and reputation in criminal actions is "against the weight of authority").

cient, although not conclusive, evidence of a legal and valid familial relationship for purposes of a criminal prosecution. The erosion of *Roswell* first began with *State* v. *Schweitzer*, 57 Conn. 532, 537, 18 A. 787 (1889), wherein this court addressed the admissibility and sufficiency of evidence admitted to support the defendant's conviction for "unlawfully neglecting and refusing to support his wife . . . ." The defendant claimed, inter alia, that pursuant to *Roswell*, his admissions concerning his marital status, and evidence of his cohabitation with his alleged wife, improperly were admitted at trial and, moreover, were insufficient for the jury reasonably to find a husband-wife relationship.[11] Id., 534. This court concluded that the evidence of cohabitation was admissible because "[t]he fact of cohabitation as man and wife raises a presumption of a legal marriage" and, although "[c]ohabitation does not make a marriage . . . it is evidence from which a jury [has] a right to find an actual marriage." Id., 538. Additionally, this court could "see no reason why the confession of the defendant that he had been married to [his alleged wife] was not admissible against him" since "[i]t was a fact peculiarly within his knowledge." Id. Accordingly, this evidence, combined with the testimony of the defendant's wife and a marriage certificate; see footnote 11 of this opinion; was admissible and sufficient to support the defendant's conviction.

Thus, despite our conclusion in *Roswell* that evidence of cohabitation is inadmissible and insufficient to support a finding of marriage in fact in a criminal action, in *Schweitzer* we concluded that such evidence is the type "from which [the jury has] the *right to find a*

---

[11] The defendant in *Schweitzer* also claimed that the trial court improperly admitted into evidence the testimony of his alleged wife and a purported marriage certificate. This court rejected the defendant's claim, noting that the defendant's alleged wife was present at the solemnization of their marriage and, therefore, was a competent witness, and that the marriage certificate clearly was admissible. *State* v. *Schweitzer*, supra, 57 Conn. 537–38.

*marriage in fact*" because "[b]y the law of England, and [presumably] all other Christian countries, where a man and a woman have long lived together as man and wife, and have been so treated by their friends and neighbors, there is a prima facie presumption that they really are and have been what they profess to be." (Emphasis added; internal quotation marks omitted.) *State* v. *Schweitzer*, supra, 57 Conn. 538. Indeed, since *Schweitzer* was decided, this court repeatedly has reaffirmed the principle that, "cohabitation as husband and wife is [admissible] evidence, and *often sufficient evidence*, that the parties have been validly married, but does not in itself constitute a marriage." (Emphasis added.) *State ex rel. Felson* v. *Allen*, 129 Conn. 427, 432, 29 A.2d 306 (1942); see also *Kowalczyk* v. *Kleszczynski*, 152 Conn. 575, 577, 210 A.2d 444 (1965); *Eva* v. *Gough*, 93 Conn. 38, 48, 104 A. 238 (1918); 29 Am. Jur. 2d, Evidence § 215 (1994) ("[w]hen a couple cohabits together and are reputedly husband and wife, the law has traditionally recognized a presumption that they are in fact married"). Thus, although cohabitation, which generally is defined as "living together as husband and wife"; (internal quotation marks omitted) *State* v. *Arroyo*, 181 Conn. 426, 432, 435 A.2d 967 (1980); "neither grants to nor imposes upon [a couple] marital status"; *McAnerney* v. *McAnerney*, 165 Conn. 277, 285, 334 A.2d 437 (1973); it often is sufficient evidence from which the trier of fact reasonably can find the existence of a valid and legal marriage.

Likewise, our conclusion in *Roswell* that a defendant's admissions concerning his or her marital status are inadmissible and insufficient as a matter of law to establish marriage in fact in a criminal action is inconsistent with *Schweitzer*, as well as our subsequent case law. First, with respect to the admissibility of the admissions of party opponents, "[i]t is an elementary rule of evidence that [such admissions] may be entered

into evidence . . . . In the criminal context, an admission is the avowal or acknowledgment of a fact or of circumstances from which guilt *may* be inferred, and only *tending* to prove the offense charged, but not amounting to a confession of guilt. . . . [S]tatements made out of court by a party-opponent are universally deemed admissible when offered against him . . . so long as they are relevant and material to issues in the case. . . . [T]he vast weight of authority, judicial, legislative, and scholarly, supports the admissibility *without restriction* of *any* statement of a party offered against that party at trial." (Citations omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 357–58, 796 A.2d 1118 (2002); see also *Tappan* v. *Knox*, 115 Conn. 508, 517, 162 A. 7 (1932) ("[a]n admission by a party of a material fact, whether made in court or elsewhere, is admissible against him"); Conn. Code Evid. § 8-3 ("[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (1) . . . [a] statement that is being offered against a party and is [A] the party's own statement, in either an individual or a representative capacity"). Moreover, "[t]here is no requirement that the statement of a party necessarily be against the party's interest either when made or offered in order to be admissible." *State* v. *Rosado*, 218 Conn. 239, 251, 588 A.2d 1066 (1991); see also *State* v. *Stepney*, 191 Conn. 233, 251, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). Indeed, "[a] statement is admissible as an admission even if it: (1) is conclusory; (2) contains a legal or factual conclusion beyond the competence of the person who made the admission; or (3) is not based on personal knowledge." *Willow Funding Co., L.P.* v. *Grencom Associates*, 246 Conn. 615, 620, 717 A.2d 1211 (1998); see also *State* v. *Markeveys*, 56 Conn. App. 716, 720,

745 A.2d 212 ("[t]he admission need not even be wholly reliable or trustworthy" to be admissible), cert. denied, 252 Conn. 952, 749 A.2d 1203 (2000).

Second, with respect to the sufficiency of the admissions of a party opponent concerning his or her marital status, it is axiomatic that such out-of-court admissions are sufficient, but not conclusive, evidence of the truth of the matter asserted. *Perrelli* v. *Savas*, 115 Conn. 42, 44, 160 A. 311 (1932); see also *Remkiewicz* v. *Remkiewicz*, 180 Conn. 114, 118, 429 A.2d 833 (1980); *Edgerton* v. *Edgerton*, 8 Conn. 6, 10 (1830). Indeed, it is the exclusive province of the trier of fact to consider this evidence in connection with all of the other evidence adduced at trial and to determine what weight, if any, to afford it. See, e.g., *Jacobs* v. *Goodspeed*, 180 Conn. 415, 418–19, 429 A.2d 915 (1980); *Clark* v. *Torrington*, 79 Conn. 42, 45, 63 A. 657 (1906). In performing its fact-finding function, the trier is free to consider whether the party opponent had firsthand knowledge of the truth of the matter asserted; see, e.g., *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 249, 492 A.2d 164 (1985); and whether the circumstances under which the admission was made, including the interest of the party opponent, render it worthy of belief. See, e.g., *Stitham* v. *LeWare*, 134 Conn. 681, 684, 60 A.2d 658 (1948); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.16.3 (c), p. 590 ("The probative force of an admission depends on the surrounding circumstances. It may have little if any weight, or in connection with other evidence it may amount to convincing proof.").

Our review of this court's jurisprudence compels us to conclude that our determination in *Roswell* that, as a matter of law, the legality and validity of a marital

relationship in a criminal action may be proven only via documentary evidence or the testimony of a firsthand witness, has been overruled by subsequent decisions of this court and, therefore, no longer is good law.[12] A fortiori, the Appellate Court improperly extended the rule articulated in *Roswell* to include parental, as well as marital, relationships.[13] *State* v. *John M.*, supra, 94 Conn. App. 674 (*Roswell* rule applies to parentage because "[j]ust as a person may suppose and confess to a marriage that in actuality is invalid, so, too, may a person suppose and confess to equally invalid parent-

---

[12] The defendant claims that the rule articulated in *Roswell* remains good law and, in support of this claim, relies on the following cases: *State* v. *Nosik*, 245 Conn. 196, 715 A.2d 673, cert. denied, 525 U.S. 1020, 119 S. Ct. 547, 142 L. Ed. 2d 455 (1988); *Remkiewicz* v. *Remkiewicz*, supra, 180 Conn. 114; *Morrow* v. *Morrow*, 165 Conn. 665, 345 A.2d 561 (1974); and *Hames* v. *Hames*, 163 Conn. 588, 316 A.2d 379 (1972). We reject the defendant's claim because these cases simply stand for the unsurprising proposition that a defendant's admission, legal documentation and/or testimony of a firsthand witness concerning the legality and validity of a familial relationship is not *conclusive* proof of that relationship. See, e.g., *State* v. *Nosik*, supra, 203–207 (trial court reasonably found no marital relationship, despite testimony of priest, testimony of firsthand witness and record of marriage ceremony in church registry because parties had not entered into marriage in good faith); *Remkiewicz* v. *Remkiewicz*, supra, 118–19 (trial court reasonably found no parent-child relationship, despite affidavit of parentage, in light of evidence that alleged father and mother had not met until three years after child's birth and that alleged father had executed affidavit of parentage in lieu of adoption); *Morrow* v. *Morrow*, supra, 669–70 (trial court improperly found that alleged father collaterally was estopped from denying paternity because under applicable law actual paternity, rather than acknowledgment of paternity, was necessary to establish parentage and it was undisputed that alleged father was not biological father); *Hames* v. *Hames*, supra, 597–98 (trial court improperly found existence of marriage in fact, even though marriage purportedly was solemnized in conformance with religious requirements, because alleged wife was absent from solemnization). Accordingly, these cases reinforce our conclusion that the jury is entitled to determine what weight, if any, to afford conflicting evidence concerning the validity and legality of familial relationships.

[13] In *Roswell*, this court did not address the admissibility and sufficiency of evidence necessary to establish parentage in a criminal action, but, rather, the admissibility and sufficiency of evidence necessary to establish a legal and valid marriage.

age"). Accordingly, we conclude that the Appellate Court improperly relied on *Roswell* to conclude that the state's failure to produce documentary evidence or testimony from a firsthand witness concerning the victim's parentage rendered the evidence in the present case legally insufficient.

Having determined that the type of evidence adduced by the state was not insufficient as a matter of law, we next address the state's claim that the evidence of the victim's parentage in this case was sufficient to support the defendant's conviction. At trial, the victim testified that J was her mother and that the defendant was her stepfather. Additionally, the state introduced into evidence the defendant's admission that, at the time of the sexual assault, he had been married legally to the victim's mother, J, for fourteen years.[14] Construing this evidence in the light most favorable to sustaining the

---

[14] Following the sexual assault, the defendant provided a voluntary oral statement to Keith Wortz, a detective with the New Haven police department, concerning the events that had occurred on April 22, 2002. The statement provides in relevant part:

"[Wortz]: Who is [the victim] to you?

"[The Defendant]: She is my wife's daughter.

"[Wortz]: And who's your wife?

"[The Defendant]: [J.]

"[Wortz]: When you say she's your wife, you're legally married?

"[The Defendant]: Yeah.

"[Wortz]: How long have you two been married together?

"[The Defendant]: Um . . . like fourteen years now.

"[Wortz]: And during your fourteen years of marriage has [the victim] always resided in your home?

"[The Defendant]: No.

"[Wortz]: How long has she lived there . . . with you?

"[The Defendant]: She just recently, just recently she came here. . . . Like last year she came.

"[Wortz]: Where'd she come from?

"[The Defendant]: She was living in [St.] John or . . . [St.] Thomas.

"[Wortz]: In the Virgin Islands?

"[The Defendant]: Yeah.

"[Wortz]: How long have you known [the victim] for?

"[The Defendant]: I been knowing her ever since I met my wife."

jury's verdict, as we are required to do,[15] we conclude that the jury reasonably found that the defendant and the victim had a stepfather-stepdaughter relationship at the time the sexual assault occurred. Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction under § 53a-72a (a) (2).

## II

The state next claims that the Appellate Court improperly concluded that the defendant's conviction under § 53a-72a (a) (2) violates the equal protection clause of the federal constitution. Specifically, the state claims that because the statute plainly applies to all individuals, regardless of sex or sexual orientation, the Appellate Court improperly determined that § 53a-72a (a) (2) prohibits sexual intercourse only between opposite sex individuals who are related within certain degrees of kindred. In support of the Appellate Court's determination, the defendant responds that § 53a-72a (a) (2) plainly prohibits sexual intercourse between opposite sex individuals only because it incorporates

---

[15] "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Gewily*, 280 Conn. 660, 667, 911 A.2d 293 (2006).

by reference the specific male-female unions enumerated in § 46b-21. Moreover, the defendant points out that General Statutes § 46b-38cc,[16] which prohibits civil unions between same sex individuals related within certain degrees of kindred, is not incorporated by reference into § 53a-72a (a) (2) and, furthermore, does not include stepparents and stepchildren within its ambit. Lastly, the defendant claims that the exclusion of same sex sexual intercourse from the purview of § 53a-72a (a) (2) rationally is not related to a legitimate government interest and, therefore, violates the equal protection clause of the federal constitution. We conclude that § 53a-72a (a) (2) does not violate the equal protection clause of the federal constitution because it applies equally to both opposite sex and same sex sexual intercourse when individuals are related within certain degrees of kindred.

As a preliminary matter, we must determine whether § 53a-72a (a) (2) treats sexual intercourse between individuals of the opposite sex who are related within certain degrees of kindred differently from sexual intercourse between individuals of the same sex who are related within the same degrees of kindred. In other words, we first must determine whether the statute creates the allegedly unconstitutional classification. See generally *State* v. *Long*, 268 Conn. 508, 534, 847 A.2d 862 ("[t]o implicate the equal protection [clause] under the . . . federal [constitution] . . . it is necessary that the state statute [or statutory scheme] in question, either on its face or in practice, treat persons

---

[16] General Statutes § 46b-38cc provides: "(a) A woman shall not enter into a civil union with her mother, grandmother, daughter, granddaughter, sister, brother's daughter, sister's daughter, father's sister or mother's sister.

"(b) A man shall not enter into a civil union with his father, grandfather, son, grandson, brother, brother's son, sister's son, father's brother or mother's brother.

"(c) A civil union between persons prohibited from entering into a civil union pursuant to subsection (a) or (b) of this section is void."

standing in the same relation to it differently" [internal quotation marks omitted]), cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). This presents an issue of statutory construction over which our review is plenary. See, e.g., *State* v. *Aloi*, 280 Conn. 824, 832, 911 A.2d 1086 (2007).

"General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650, 931 A.2d 142 (2007). "Furthermore, we presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) *State* v. *Cardwell*, 246 Conn. 721, 738–39, 718 A.2d 954 (1998).

We are mindful that "[t]he infusion into [the statutes pertaining to incest] of the degrees of relationship set out in § 46b-21 as the predicate for the commission of the crime of incest invokes the rule of strict construction that is applied to criminal statutes. The United States Supreme Court has said: That criminal statutes are to be construed strictly is a proposition which calls for the citation of no authority. But this does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature. *United States* v. *Bramblett*, 348 U.S. 503, 509–10, 75 S. Ct. 504, 99 L. Ed. 594 (1955). The same court also said: No rule of construction, however, requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be

within its scope—nor does any rule require that the act be given the narrowest meaning. It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislature]. *United States* v. *Raynor*, 302 U.S. 540, 552, 58 S. Ct. 353, 82 L. Ed. 413 (1937). We have said: Strict construction does not mean that a statute must be read in isolation. In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. . . . The rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the obvious legislative intent. . . . *In re Luis R.*, 204 Conn. 630, 635, 528 A.2d 1146 (1987). Such authority demonstrates that the rule of strict construction of penal statutes is not without limitation; the doctrine of strict construction is only one of the aids which is to be used in the construction of penal statutes. See 3 J. Sutherland, Statutory Construction (4th Ed. 1986) § 59.06." (Internal quotation marks omitted.) *Singh* v. *Singh*, 213 Conn. 637, 646–47, 569 A.2d 1112 (1990); id., 656 (degrees of kindred enumerated in § 46b-21 includes uncle and niece related by half blood).

We begin our analysis with the text of § 53a-72a (a), which provides that "[a] person is guilty of sexual assault in the third degree when such person . . . (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the *degrees of kindred* specified in section 46b-21." (Emphasis added.) Section 46b-21, in turn, provides that "[n]o man may marry his mother, grandmother, daughter, granddaughter, sister, aunt, niece, stepmother or stepdaughter, and no woman may marry her father, grandfather, son, grandson, brother, uncle, nephew, stepfather or stepson. Any marriage within these degrees is void."

To resolve the state's claim, we must determine whether the phrase "degrees of kindred" in § 53a-72a (a) (2) incorporates by reference the precise male-female unions enumerated in § 46b-21. Because the phrase "degrees of kindred" is not defined in the governing statutory scheme, we turn to the dictionary definitions of the words included therein to ascertain its meaning. See General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"); see also *Robinson* v. *Gailno*, 275 Conn. 290, 298, 880 A.2d 127 (2005) (common usage and ordinary meaning of statutory terms "are determined appropriately by review of [their] dictionary definition[s]" [internal quotation marks omitted]). The Random House Dictionary of the English Language defines the word "degree" in relevant part as "a certain distance or remove in the line of descent, determining the proximity of a relationship . . . ." The Random House Dictionary of the English Language (1966). It further defines the word "kindred" in relevant part as a "relationship by birth or descent, or sometimes by marriage; kinship." Id. The phrase "degrees of kindred" therefore plainly refers to the proximity of relation between family members related by birth or marriage.

We next turn to the definition of the phrase "sexual intercourse" as used in § 53a-72a (a) (2), which is defined by General Statutes § 53a-65 (2)[17] as "vaginal

[17] General Statutes § 53a-65 provides in relevant part: "As used in this part, except section 53a-70b, the following terms have the following meanings . . .

"(2) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. . . ."

intercourse, anal intercourse, fellatio or cunnilingus between persons *regardless of sex. . . .*" (Emphasis added.) By its express terms, § 53a-72a (a) (2) therefore prohibits individuals related within the proximity of relation demarcated in § 46b-21 from engaging in vaginal intercourse, anal intercourse, fellatio or cunnilingus, *regardless of their sex or sexual orientation.* To conclude otherwise would require us to read the phrase "regardless of sex" out of the statutory scheme, which we are not permitted to do. See, e.g., *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 217, 901 A.2d 673 (2006). Accordingly, § 53a-72a (a) (2) plainly does not incorporate the precise male-female unions enumerated in § 46b-21 but, rather, incorporates only the proximity of relation specified therein, namely, parent-child, grandparent-grandchild, sibling-sibling, aunt/uncle-niece/nephew and stepparent-stepchild. Because § 53a-72a (a) (2) applies equally to both same sex and opposite sex sexual intercourse between individuals who are related within the degrees of kinship specified in § 46b-21, it does not create the allegedly unconstitutional classification and, therefore, does not violate the equal protection clause of the federal constitution.

The defendant claims, however, that our construction of § 53a-72a (a) (2) creates absurd and unworkable results because a stepparent and stepchild legally may enter into a civil union under § 46b-38cc, but are prohibited from consummating that union under § 53a-72a (a) (2). We are not persuaded. "Where, as here, more than one statute is involved, we presume that the legislature intended them to be read together to create a harmonious body of law. . . . The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." (Citation omitted; internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 795,

785 A.2d 573 (2001). A comparison of the degrees of kindred specified in § 46b-38cc with those specified in § 46b-21 reveals that they are the same, with the exception of the stepparent-stepchild relationship. We conclude that the omission of the stepparent-stepchild relationship from § 46b-38cc merely reflects the fact that a stepparent is not eligible to enter into a civil union with a stepchild because he or she necessarily already is married to, or has entered into a civil union with, the stepchild's parent.[18] See General Statutes § 46b-38aa (" '[c]ivil union' means a union established pursuant to sections 46b-38aa to 46b-38oo, inclusive, between two eligible persons"); General Statutes § 46b-38bb ("[a] person is eligible to enter into a civil union if such person is . . . [1] [n]ot a party to another civil union or a marriage"). Moreover, it would have been unnecessary and superfluous for the legislature to include the stepparent-stepchild relationship within the degrees of kindred specified in § 46b-38cc, and to cross-reference that statute in § 53a-72a (a) (2) to criminalize same sex sexual intercourse between stepparents and stepchildren because, as previously explained, § 53a-72a (a) (2) already plainly and unambiguously criminalizes such sexual intercourse. See generally *Southern New England Telephone Co.* v. *Cashman,* supra, 283 Conn. 659 ("[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions" [internal quotation marks omitted]).

---

[18] We recognize that § 46b-21 explicitly prohibits a stepparent from marrying his or her stepchild, even though the stepparent is ineligible for marriage by virtue of his or her preexisting marital relationship. We conclude, however, that whereas § 46b-38cc only delineates the degrees of kindred within which a civil union is void, § 46b-21 serves a dual purpose in that it delineates the degrees of kindred within which a marriage is void and, also, by virtue of its incorporation into § 53a-72a (2), the degrees of kindred within which sexual intercourse is prohibited. Accordingly, the stepparent and stepchild relationship explicitly is included in § 46b-21, even though a stepparent and stepchild legally may not marry given the stepparent's preexisting marriage, because it is a degree of kindred within which sexual intercourse is prohibited.

The defendant claims, however, that the stepparent-stepchild relationship survives the demise of the civil union or marriage that creates it and, as a result, a stepparent may be eligible to enter into a civil union with his or her stepchild under § 46b-38aa et seq. but, paradoxically, unable to consummate that union under our construction of § 53a-72a (a) (2). We reject this claim in light of this court's conclusion, as reflected in *Wilson* v. *State*, 6 Law Rptr. 452 (Conn. 1843), that the stepparent-stepchild relationship does not survive the dissolution of the marriage by which it was created for purposes of the crime of incest.[19] See id., 456 (trial court determined, consistent with this court's resolution of reserved question of law, that for purposes of crime of incest, stepparent-stepchild relationship ends with dissolution of marriage).[20] Pursuant to *Wilson*, the affi-

[19] General Statutes § 46b-40 (a) provides: "A marriage is dissolved only by (1) the death of one of the parties or (2) a decree of annulment or dissolution of the marriage by a court of competent jurisdiction." Additionally, General Statutes § 46b-38oo provides in relevant part that "[w]herever in the general statutes . . . the term 'marriage' is used or defined, a civil union shall be included in such use or definition."

[20] In *Wilson*, the defendant was charged and convicted of the crime of incest for cohabiting with the daughter of his deceased wife. *Wilson* v. *State*, supra, 6 L. Rptr. 452. The defendant filed a writ of error and a bill of exceptions in the Superior Court challenging his conviction, claiming that "[t]he affinity with [his stepdaughter] ceased on the death of [his] wife. It *came* by marriage, and *went* with the marriage." (Emphasis in original.) Id., 454. Following oral argument, the trial court "reserved the cause for the advise of the other judges of the supreme court, at their annual meeting in November . . . ." Id., 456. Thereafter, the trial court issued its memorandum of decision: "I have consulted with my brethren of the supreme court; and we are of opinion that . . . [t]he affinity between the [defendant] and [his stepdaughter] was dissolved by the death of her mother. The judgment of the court below must therefore be reversed on the ground that the acts charged do not constitute the crime of incest." Id.

The defendant claims that this court overruled *Wilson* in *Lavieri* v. *Commissioner of Revenue Services*, 184 Conn. 380, 383–86, 439 A.2d 1012 (1981), wherein we concluded that, for purposes of the succession tax; see General Statutes § 12-344; the stepparent-stepchild relationship survives the dissolution of the marriage by which it was created. We reject this claim. In *Lavieri*, we noted that "the context in which the 'step' relationship is involved is crucial" and, therefore, explicitly "limit[ed] our holding to questions involving the succession tax and stepchildren." *Lavieri* v. *Commissioner of Reve-*

nal relationship between a stepparent and a stepchild terminates with the dissolution of the stepparent's marriage and, consequently, a former stepparent legally may enter into a civil union or a marital relationship with his or her former stepchild under §§ 46b-21 or 46b-38cc, and legally may consummate that union under § 53a-72a (a) (2).[21] Accordingly, our construction of § 53a-72a (a) (2) is neither absurd nor unworkable, but, rather, comports with the intent of the legislature as manifested by the plain language of the statute.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims.

In this opinion the other justices concurred.

---

*nue Services,* supra, 384. Indeed, we observed that, "[i]n other contexts the 'step' relationship may or may not continue after the termination of the marriage which created it" and, as an example, pointed to *Wilson,* wherein "[t]he court held that the affinity between the defendant and the stepdaughter was dissolved by the death of her mother." Id.; see also *Remington* v. *Aetna Casualty & Surety Co.,* 35 Conn. App. 581, 587, 646 A.2d 266 (1994) ("the survival of affinal relationships depends on the context in which they are asserted").

[21] We need not reconsider this conclusion to resolve the present appeal and, therefore, we do not do so. We note, however, that various scholarly commentators have criticized the conclusion that the affinal relationship between a stepparent and a stepchild conclusively terminates with the dissolution of the stepparent's marriage because a dependency relationship between the stepparent and stepchild may continue to exist. See, e.g., C. Bratt, "Incest Statutes and the Fundamental Right of Marriage: Is Oedipus Free to Marry?" 18 Fam. L.Q. 257, 290–91 (1984) (arguing that prohibition on incest should not be based on marital status, but, rather, on whether family members are part of same household unit); note, "Inbred Obscurity: Improving Incest Laws in the Shadow of the 'Sexual Family,' " 119 Harv. L. Rev. 2464, 2475 (2006) (arguing that prohibition on incest should not be based on marital status, but, rather "on a more straightforward inquiry into whether a dependency relationship [persists between the stepparent and the stepchild] regardless of technical family status"). We point out that General Statutes § 53a-73a (a) (1) (D) addresses the concern of these scholarly commentators, at least in part, because it prohibits an actor from engaging in sexual contact with an individual who is less than eighteen years old if the actor is "such other person's guardian or otherwise responsible for the general supervision of such other person's welfare . . . ."